UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES RICHARDS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-13195-LTS |
| ERIC HOLDER, Attorney General of the United States of America, | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION TO DISMISS

June 19, 2014

SOROKIN, D.J.

Plaintiff James Richards has sued Defendant Eric Holder in his official capacity as United States Attorney General, alleging that the federal statute prohibiting the sale of human organs for transplantation, 42 U.S.C. § 274e, violates his due process rights and exacts a taking without just compensation. Doc. No. 1 ¶¶ 44-45, 53. Richards also requests a declaration that the statute would not apply to him so long as he purchases an organ from a person within Massachusetts. Id. at 11. Defendant has moved to dismiss the counts alleging due process violations and a taking, arguing that those counts fail to state a claim. Doc. Nos. 18-19. Richards has opposed the motion. Doc. Nos. 20-21. For the reasons that follow, Defendant's motion to dismiss is ALLOWED, and Richards is ordered to show cause why the request for declaratory relief should not be dismissed for lack of jurisdiction.

I.  BACKGROUND

The following facts, drawn from Richards's complaint, are taken as true for the purposes of resolving this motion. The Court draws all reasonable inferences from these factual allegations in Richards's favor.

Richards currently suffers from end stage renal disease, which is a product of kidney damage that was caused by previously prescribed medication. Doc. No. 1 ¶¶ 4-5. The only treatment for the disease at this stage is dialysis or a kidney transplant. See id. ¶ 12. Richards is currently receiving dialysis treatment, which requires lengthy treatment sessions several times per week. Id. ¶¶ 17-18. The sessions range from uncomfortable to painful and can have significant negative side effects. Id. ¶ 19. Richards avers that his life expectancy would be meaningfully longer if he received a kidney transplant rather than continuing dialysis. Id. ¶ 30. He further states that the longer he is on dialysis, the less likely it is that any eventual transplant will be successful and the less likely a significant increase in life expectancy will result from that transplant. Id.

Richards has asked family members to donate a kidney for transplant, but they are not willing or able to do so. Id. ¶ 7. He is eligible for a "perfect match" kidney donation, but, thus far, none has been found. Id. ¶¶ 9, 11. Without a "perfect match," Richards will likely wait four to five years in order to receive a kidney for transplant. Id. ¶ 11. In order to minimize the time waiting for a kidney, Richards's family is willing to pay a donor at least $50,000 for the donation of a kidney. Id. ¶ 25. His intention to offer payment to incentivize the donation of a kidney is thwarted, however, by 42 U.S.C. § 274e, which makes it a federal crime "for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation." § 274e(a); Doc. No. 1 ¶ 25. Violations of the statute are

punishable by fines of up to $50,000 and imprisonment of not more than five years. § 274e(a)-(b).

Richards argues that if he were able to pay a donor to donate a kidney, he would likely be able to procure a kidney with less delay, with the attendant benefit of increased life expectancy, than if he were forced to wait to receive a kidney off the waiting list. See Doc. No. 1 ¶ 36. As such, Richards argues that, as applied to him, § 274e deprives him of both life and liberty without due process of the law, in violation of the Fifth Amendment to the United States Constitution. Id. ¶¶ 44-45.

Richards also states his preference to have his own organs harvested and sold upon his death, such that the proceeds of those sales may be included in his estate and passed to his heirs. Id. ¶ 50. He argues that because § 274e prevents him from selling his organs and because the United States will not provide just compensation for those organs, the statute effects an unconstitutional taking in violation of the Fifth Amendment of the Constitution. Id. ¶¶ 51-53.

Finally, Richards requests a declaration that the statute, which only criminalizes transfers that affect interstate commerce, would not apply to him if he purchased a kidney from someone within Massachusetts. Id. at 11.

II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from

"conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This highly deferential standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)).

III. SUBSTANTIVE DUE PROCESS CLAIM

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Noting that the Clause "guarantees more than fair process," the Supreme Court in Washington v. Glucksberg set forth the analysis to evaluate substantive due process claims. 521 U.S. 702, 719, 720-21 (1997). The Court noted that the inquiry has "two primary features":

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (quotation marks and citations omitted). In applying this analysis, courts carefully describe the asserted right and then address whether that right falls within the category of fundamental rights and liberty interests described above. See id. at 722-24. If the asserted right is considered fundamental, any infringement of that right

4

will be subject to strict scrutiny and will be deemed unconstitutional "unless the infringement is narrowly tailored to serve a compelling state interest." Id. at 721 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)).  The Supreme Court, however, has warned that courts should be reluctant to add to the list of fundamental rights, noting that "[b]y extending constitutional protection to an asserted right or liberty interest, [the Court], to a great extent, place[s] the matter outside the arena of public debate and legislative action." Id. at 720.  Alternatively, for those rights and liberty interests which are not deemed fundamental, infringement is subject only to rational basis review and will be upheld "so long as the law is rationally related to a legitimate governmental interest." Cook v. Gates, 528 F.3d 42, 55 (1st Cir. 2008) (citing Nordlinger v. Hahn, 505 U.S. 1, 11-12, (1992)).

Richards first contends that 42 U.S.C. § 274e constitutes a deprivation of life and liberty without due process of law. [1]  The Supreme Court has gone to lengths to caution lower courts to carefully define rights asserted in the substantive due process context. Glucksberg, 521 U.S. at 721-23.  Richards cannot claim that Congress has prohibited outright the form of treatment he seeks—an organ transplant—as the statute does no such thing.  Rather, the statute of which § 274e is a part creates a system to permit and to encourage transplants. See National Organ Transplant Act, Pub. L. No. 98-507 § 201, 98 Stat. 2339, 2342-45 (1984) (authorizing grants to be made to qualifying organ procurement organizations and providing for the establishment of an Organ Procurement and Transplantation Network).  Further, the statute does not block the only

---

[1] While Richards raises an independent due process claim that the statute deprives him of his right to life, the complaint does not support such a claim.  Section 274e has not deprived him of his life and courts have rejected a reading of the due process right to life that is so broad as to include a right to "try to save one's life." See Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 701 n.5 (D.C. Cir. 2007) (en banc). Accordingly, the Court will proceed to analyze whether the complaint states a claim for deprivation of a liberty interest in violation of the Fifth Amendment.

5

treatment available to him, as he currently receives another form of medical treatment, dialysis, for his condition.

Richards's complaint, in fact, is that Congress has banned a particular means of encouraging transplants—monetary payments—which he asserts would speed the availability of an organ for him. He does not argue that Congress cannot regulate the transfer of organs at all, as he concedes in his complaint that some regulation by Congress of the exchange of money for an organ would be appropriate, and by implication, constitutional. Doc. No. 1 ¶ 46. Carefully read then, Richards claims a due process right to procure a kidney by buying one.

Richards's substantive due process claim fails for three reasons. First, the Ninth Circuit considered and rejected a challenge to the constitutionality of § 274e. In Flynn v. Holder, the court upheld the ban on the sale of body parts for transplant against an equal protection challenge brought by a collection of plaintiffs who sought to incentivize bone marrow transplants by providing valuable consideration to persons who provided bone marrow for donation. 684 F.3d 852, 855-56, 861-62 (9th Cir. 2012). The court upheld the law without applying heightened scrutiny to the statute, which would be required if the ban implicated a fundamental right, and found the statute constitutional after rational basis review. See id. at 859-62. This decision is persuasive authority for the proposition that Richards does not have a fundamental constitutional right to buy a kidney.

Second, the District of Columbia Circuit rejected a substantive due process challenge that raised a similarly asserted right, notwithstanding the fact that the plaintiffs in that case presented an even more compelling case than Richards in law and fact. Alliance for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 701 (D.C. Cir. 2007) (en banc). In Abigail, the law (in the form of federal regulations) barred access to certain experimental drugs

sought by the plaintiffs, who, factually, were terminally ill and without any treatment options other than the experimental drugs they sought. Id. at 700-01. In this case, by contrast, the law (in the form of the larger act of which § 274e is a part) facilitates, albeit not without limitation, Richards's access to kidney transplants, and, factually, he is currently availing himself of an alternative treatment for his condition. Yet, notwithstanding stronger factual and legal arguments, the Abigail court determined that terminally ill individuals do not have "a fundamental right to experimental drugs that have passed [initial phase] clinical testing" and rejected the plaintiffs' constitutional claim. 495 F.3d at 701, 711-13. In so doing, the court emphasized both the high hurdle that must be cleared to establish a right as fundamental and the deference due to legislatures in crafting a balance between the risks and benefits of medical technology where no fundamental right is implicated. Id. at 706-07, 713. The persuasive reasoning of the Abigail court applies with even more force to Richards's challenge.

Finally, Richards's due process claim fails because he has not articulated how the asserted right is "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." See Glucksberg, 521 U.S. at 721 (citations and internal quotation marks omitted). He has not made any showing of a historical basis for the right to encourage donation of organs by offering cash payments. Nor does the complaint set forth sufficient detail to bring into sharp relief a deprivation, both immediate and springing directly from the statute, of such a magnitude as to implicate rights implicit in the concept of ordered liberty. Instead, Richards generally objects to the balance Congress has struck between incentivizing the donation of organs for transplant and limiting the individual and societal risks attendant to the sale of human organs. Such an

7

argument is not sufficient to invoke heightened scrutiny of the statute nor to establish that the statute lacks a rational relationship to a legitimate government interest.[2]

For these reasons, the Court finds the right to offer cash for the donation of an organ for transplant not to be fundamental. As such, the statute is subject only to rational basis review, which it easily satisfies. Accordingly, Defendant's motion to dismiss Richards's count alleging a due process deprivation is ALLOWED.

IV. TAKING CLAIM

The Takings Clause of the Fifth Amendment instructs that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "To make a cognizable claim of a taking in violation of the Fifth Amendment, the plaintiff[] must first show that [he] possess[es] a recognized property interest which may be protected by the Fifth Amendment." Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 27 (1st Cir. 2007) (quoting Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 973 (1st Cir. 1993)). "[T]he existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" Phillips v. Wash. Legal Found., 524 U.S. 156, 164 (1998) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). "Assuming that the plaintiff can establish a constitutionally

---

[2] Although Richards argues that the law is not a "credible" attempt to increase the supply of organs, Doc. No. 21 at 1, that is insufficient to invalidate the law under rational basis review. To succeed under rational basis review, "[t]he challenger . . . must negate any and all conceivable bases upon which the challenged regulation might appropriately rest." González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011). Another court, in addressing the ban on the sale of human organs, cited numerous policy concerns that are sufficient to justify the prohibition, including the prospect of undue pressure being placed on underprivileged persons to sell their organs, encouraging force or fraud in obtaining organs for sale, and the creation of incentives not to disclose relevant medical history in the course of such a sale. See Flynn v. Holder, 684 F.3d 852, 860 (9th Cir. 2012). The Court cannot say that the prohibition on the sale of human organs bears no rational relationship to these legitimate policy concerns. See Glucksberg, 521 U.S. at 735.

protected property interest, the plaintiff must next show that the challenged action 'cause[d] an illegal taking of th[at] interest[ ].'" Flores Galarza, 484 F.3d at 27 (quoting Mass. Bar Found., 993 F.2d at 974)).

Richards contends that the statute, by prohibiting him from selling his organs upon his death, has exacted a taking without just compensation. His claim of a taking fails, however, because he can make no showing that any independent source, such as state law or traditional common law principles, supports a constitutionally protected property interest in the sale of one's organs after death.

Looking first to state law, Massachusetts has made clear that it does not recognize such a property right by adopting the Uniform Anatomical Gifts Act, which provides criminal penalties for the purchase or sale of organs intended for transfer after death. Mass. Gen. Laws ch. 113A, § 16. Looking more broadly at Massachusetts common law, there appears to be no current or historical recognition of a right to transfer one's organs for valuable consideration. Further, there appears to be no support for such a property right under traditional common law principles. See Newman v. Sathyavaglswaran, 287 F.3d 786, 794 (9th Cir. 2002) (noting, after an exhaustive review of the history of property rights in dead bodies, that the right to transfer body parts upon death does not include the right to receive valuable consideration for those transfers).

Because Richards does not and can not show that he possesses a constitutionally protected property interest in the sale of his organs upon his death, he cannot state a claim for an unconstitutional taking. See Flores Galarza, 484 F.3d at 27. Accordingly, Defendant's motion to dismiss the taking count is ALLOWED.

V.     REQUEST FOR DECLARATORY RELIEF

Richards also requests a declaration that 42 U.S.C. § 274e would not apply to him so long as he purchases an organ from someone within Massachusetts, presumably referring to the provision in the statute that limits its reach to transfers which affect interstate commerce.[3] This claim raises questions of the justiciability of such a request for declaratory relief.[4]

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013). This restriction applies with equal force in actions for declaratory judgment. See MedImmune, Inc. v Genentech, Inc., 549 U.S. 118, 126-27 (2007). The inquiry in the declaratory judgment context, as framed by the Supreme Court, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In this case, Richards is essentially asking the Court to issue a pre-enforcement opinion on the construction of a federal criminal statute given a hypothetical set of facts. Whether the Court may do so turns largely on the allegations contained in the complaint. See Susan B. Anthony List v. Driehaus, No. 13-193, slip op. at 11 (U.S. June 16, 2014). Here, there are no allegations in the complaint to indicate that Richards has located an individual who, but for the statute, would be willing to donate a kidney in exchange for an amount of money that Richards is

---

[3] The statute, in relevant part, states that "[i]t shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce." 42 U.S.C. § 274e(a).

[4] Although this issue was not raised by the parties, the Court has "an affirmative obligation to examine jurisdictional concerns on [its] own initiative." Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998) (en banc).

willing to pay.  Nor is any specificity provided as to how such a transplant would proceed in such a way that the transfer would not affect interstate commerce.  As such, the allegations in the complaint are not sufficient to remove the claim for relief beyond the realm of the speculative or hypothetical to allege a controversy of "of sufficient immediacy and reality."  See MedImmune, 549 U.S. at 127; see also Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994) ("The controversy must be such that it admits of 'specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'") (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)).

For this reason, there is a significant question as to whether there is a case or controversy granting this Court jurisdiction over the request for declaratory relief.  Richards, however, has not had the opportunity to respond to this issue as the government did not raise this argument in their brief.  Accordingly, Richards has fourteen days from the date of this Order to show cause why the request for declaratory relief should not be dismissed for lack of jurisdiction, given the concerns outlined above.

VI.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is ALLOWED, and Counts I and II are DISMISSED.  Richards shall, within fourteen days, show cause why the request for declaratory relief, Count III, should not be dismissed for lack of jurisdiction.

SO ORDERED.

    /s / Leo T. Sorokin
Leo T. Sorokin
United States District Judge